IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *     Crim. No. CCB-09-369 |
| | * |
| DARRYL WHITE | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Darryl White is a federal prisoner who is serving a 188-month sentence for drug trafficking. White has served approximately 131 months—almost 70 percent—of his sentence. Now pending is White's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. (ECF 136).[1] The government opposes the motion, (ECF 135), and White has replied, (ECF 138).[2] For the reasons explained below, the motion will be granted and White's sentence will be reduced to time served plus fourteen days, followed by a four-year term of supervised release.

### BACKGROUND

Between December 2007 and June 2009, White participated in a conspiracy to distribute and to possess with the intent to distribute heroin. (ECF 60 at 3 (Plea Agreement)). As part of a joint Baltimore Police Department ("BPD") and Drug Enforcement Administration ("DEA") investigation, the court authorized wiretaps of the cell phones of members of the conspiracy. (*Id*. at 4). The wiretap evidence revealed White's involvement in six heroin transactions. (*Id*.).

---

[1] Defense counsel initially filed an incorrect version of the motion. (ECF 132). Upon review of both submissions, the court will consider the corrected version (ECF 136) as White's motion.
[2] White also filed supplemental correspondence alerting the court to an additional case in support of his motion, (ECF 139), and to updated Centers for Disease Control ("CDC") guidelines for people who are at increased risk for severe illness from COVID-19, (ECF 140).

1

During a two-month period beginning in April 2009, White and his co-conspirators accepted and filled orders for at least 680 grams of heroin. (*Id*. at 4–5). On February 22, 2010, White pled guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1). (*Id*. at 1).

The U.S. Probation office determined that White's total offense level was 31 and that he was in criminal history category VI. (*See* Presentence Report ("PSR") ¶¶ 30, 58, ECF 132-6). U.S. Probation also determined that White was a career criminal because he had two prior felony convictions involving controlled substance offenses. (*Id*. ¶ 58). White's resulting guideline range was 188 to 235 months. (*Id*. ¶ 71). On July 19, 2010, the court imposed a sentence of 188 months' imprisonment, followed by a four-year term of supervised release. (ECF 95).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id*. But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

On April 30, 2020, White filed an administrative request for compassionate release to the

warden of FCI Loretto, the facility where White is currently housed. (*See* ECF 132-5). The request was denied. (*Id.*). The government does not contest that White's motion is properly before the court. (Opp'n at 6 n.3, ECF 135 ("Because Petitioner presented his request to the Warden more than 30 days before filing the instant motion, he has met the minimum administrative prerequisite under § 3582(c)(1)(A) for filing the motion.")).[3] The only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of White's sentence and (2) whether the § 3553(a) factors weigh in favor of such a reduction.

## DISCUSSION

### I. "Extraordinary and compelling reasons"

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). The BOP criteria for "other reasons" justifying a sentence reduction are set forth in Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"). As this court and others have held, however, the court possesses

---

[3] White notes that he appealed the warden's denial of his request. (Mot. at 5, ECF 136). There is no indication that the appeal has been decided. But "because the BOP has issued a final decision on Petitioner's request, the government is not asking the Court to stay this matter pending completed BOP review." (Opp'n at 6 n.3).

independent discretion—guided, but not bound by, Sentencing Commission and BOP criteria—to determine whether there are "extraordinary and compelling reasons" to reduce a sentence. *See United States v. Decator*, --- F. Supp. 3d ----, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (citing cases).[4]

White argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (neutropenia, hyperlipidemia, hypertension, heart disease, chronic kidney disease, and obesity) constitutes an "extraordinary and compelling" reason to reduce his sentence. (Mot. at 1, ECF 136). According to the government, current Department of Justice ("DOJ") policy provides that an inmate presents an "extraordinary and compelling reason" for sentence reduction "if he or she presents one of the factors identified by the CDC [Centers for Disease Control] that poses an increased risk of severe illness from COVID-19[.]" (Opp'n at 11–12). Pursuant to this policy, a defendant's showing of such a risk factor qualifies as a "serious physical or medical condition" within the meaning of §1B1.13 cmt. (A), "even if that condition in ordinary times would not allow for compassionate release." (*Id*.).

The government argued in its opposition to White's motion that none of White's underlying conditions are among the CDC risk factors (or sufficiently serious to be categorized as a risk factor), and that he is thus ineligible for compassionate release. (Opp'n at 11–12). As an initial matter, the court notes that it is not bound by the DOJ's interpretation of §1B1.13 cmt. (A). But even accepting that interpretation, recent updates to the CDC risk factors suggest that White's underlying conditions now constitute an extraordinary and compelling reason for compassionate release. On June 25, 2020, after the government filed its opposition, the CDC

---

[4] The court's independent discretion stems from the First Step Act of 2018, which, *inter alia*, amended 18 U.S.C. § 3582(c) with the stated goal of "increasing the use and transparency of compassionate release." *See* First Step Act § 603(b), Pub. L. No. 115-291, 132 Stat. 5194; *see also Decator*, 2020 WL 1676219, at *1–3 (explaining Policy Statement § 1B1.13's partial inconsistency with the First Step Act amendments to § 3582(c)).

4

expanded its categories of who is at greater risk. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated June 25, 2020). White now falls squarely into two risk categories: obesity (defined as a body mass index "BMI" of 30 or higher), and chronic kidney disease (which encompasses "chronic kidney disease of any stage"). *Id*. White has a BMI of 36.0–36.9 and stage 2 chronic kidney disease. Moreover, the CDC has stated that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19," *id*., suggesting that White's other conditions exacerbate his risk. Based on the government's own formulation of what constitutes an "extraordinary and compelling reason," then, White has made the required showing.

Compounding the risk to White is the mere fact of his incarceration. The CDC has warned that once introduced, COVID-19 may spread more quickly in correctional facilities relative to other environments. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html; *see also Coreas v. Bounds*, --- F. Supp. 3d ----, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). This is due in part to the close living arrangements of detainees, which impede social distancing efforts, and also because many facilities limit access to soap and paper towels, and prohibit alcohol-based hand sanitizers. *Interim Guidance,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html; *see also Coreas*, 2020 WL 1663133, at *2.

The government argues that White "is not currently at risk of contracting COVID-19

5

because there are no cases at FCI Loretto, either among the inmate population or among the BOP staff." (Opp'n at 12). While the existence of an outbreak at a facility is a factor to consider, it is not dispositive of whether an extraordinary and compelling reason exists. *See, e.g., United States v. Blye*, No. CR15-348RSL, 2020 WL 3064225, at *4 (W.D. Wash. June 9, 2020) ("Although there are currently no COVID-19 cases at FDC SeaTac, and although the BOP has undertaken efforts to prevent and control outbreaks of the virus, the Court agrees with defendant that the possibility of outbreak remains high. Given the risks, it makes little sense to wait for such an outbreak before considering defendant's request for health-based compassionate release."). And while the BOP's efforts at containing the spread of COVID-19 are commendable, they by no means eliminate the risks to prisoners like White. *See United States v. Rodriguez*, No. 17-CR-157 (VEC), 2020 WL 3051443, at *2–3 (S.D.N.Y. June 8, 2020) (pointing out numerous shortfalls of BOP's precautionary measures; "the Court credits that the BOP is doing the best it can . . . , but even its best involves rationing masks and tests."). As one court in this district recently noted, "the happy fact that there have been no positive tests yet at [FCI Loretto] does not prevent the finding of extraordinary and compelling reasons for release." *United States v. Martin*, No. CR 04-235-DKC-5, ECF 2006 at 6–7 (D. Md. June 24, 2020).[5]

Based on the above considerations, the court finds that White's increased risk of severe illness related to COVID-19 is an "extraordinary and compelling" reason to consider him for compassionate release.

## II.    Section 3553(a) factors

Eligibility for compassionate release, however, does not guarantee relief. The court also must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See*

---

[5] BOP records indicate that the defendant in *Martin*, John Albert Martin, Jr., was incarcerated at FCI Loretto. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (search: John Albert Martin).

18 U.S.C. § 3582(c)(1)(A). With respect to White's personal history and characteristics, *see* § 3553(a)(1), the government asserts that White's "criminal history is substantial" and notes that he committed the instant offense while on parole. (Opp'n 17). While the government is correct that White had a not-insignificant number of prior convictions in his teens and early twenties, more than half appear to be for driving on a suspended license, and none involved violence or firearms. (PSR ¶¶ 33–53, 59–65). And, according to the PSR, when White committed the offense of conviction, he was on parole for driving on a suspended and revoked license. (*Id.* ¶ 55). Without minimizing White's prior criminal conduct, the court considers it alongside White's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United* States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). In his more than ten years in the BOP, White has participated in extensive educational and vocational programming and has earned his GED. (ECF 132-3 (BOP Program Review)).[6] White has maintained strong ties with his mother and sister, who have offered White a place to live if released. (*See* ECF 133 (letters of support)). The record does not indicate any disciplinary problems at the BOP. Notably, the government does not contest White's positive post-sentencing conduct.

      The court acknowledges that White's drug trafficking offense was indeed serious. The court believes that the 131 months in prison White has already served sufficiently reflect the seriousness of his conduct and take into account the need for deterrence, public safety, and respect for the law. The court also finds that the risks to White posed by additional incarceration outweigh the potential benefits. In light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors

---

[6] White notes that BOP efforts to protect staff and inmates from contracting COVID-19 has impacted his ability to participate in additional rehabilitative programming. (Mot. at 19).

weigh in favor of reducing White's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## CONCLUSION

For the foregoing reasons, White's motion for sentence reduction will be granted and his sentence will be reduced to time served plus fourteen days, followed by a four-year term of supervised release. The terms and conditions of supervised release to which White was originally sentenced will remain in place, with the added condition that for the first fourteen days of his supervision, White will remain at home except for medical or other emergencies. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows.

| | |
|---|---|
| 07/10/2020 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |